UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THERESA GOLDEN,                                    6:18-CV-06803-MJR
                                                   DECISION AND ORDER
                        Plaintiff,

        -v-

ANDREW SAUL,
Commissioner of Social Security,[1]

                        Defendant.

_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13).

Plaintiff Theresa Golden ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 11) is granted, defendant's motion (Dkt. No. 12) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND[2]

Plaintiff protectively filed applications for disability insurance benefits (DIB) and SSI benefits on July 24, 2015, alleging disability since May 5, 2012, due to degenerative

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] The Court assumes the parties' familiarity with the case.

disc disease in lumbar spine with arthritis, degenerative disc disease in cervical spine with arthritis, asthma, migraines, and inability to sit for long periods, lift/bend, and turn head. (*See* Tr. 11, 241-250, 297).[3] Plaintiff's disability benefits application was initially denied on September 25, 2015. (Tr. 122-137). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") John P. Costello on December 18, 2017. (Tr. 37-81). ALJ Costello heard testimony from plaintiff, who was represented by counsel, as well as from Sakinah Malik, an impartial vocational expert. (*Id.*). At the hearing, plaintiff withdrew her DIB application and amended the alleged onset date to July 14, 2015. (Tr. 11, 37-38). On February 26, 2018, ALJ Costello issued a decision that plaintiff was not disabled under the Act. (Tr. 8-21). Plaintiff timely sought review of the decision by the Appeals Council. (Tr. 27-28, 225-228). Plaintiff's request for review of the decision was denied by the Appeals Council on September 25, 2018. (Tr. 1-7). The ALJ's February 26, 2018 denial of benefits then became the Commissioner's final determination, and the instant lawsuit followed.

Born on December 20, 1984, plaintiff was 30 years old on the amended alleged disability onset date and 32 years old on the date of the hearing. (Tr. 39). Plaintiff is able to communicate in English, has limited education, and had no past relevant work experience. (Tr. 20, 39-40).

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are

---

[3] References to "Tr." are to the administrative record in this case.

"supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     _Standards for Determining "Disability" Under the Act_

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." _Id._ § 423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." _Dumas v. Schweiker_, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (_quoting Miles v. Harris_, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4); 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." _Id._ § 404.1520(b); 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." _Id._ Second,

4

if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* § 404.1520(c); 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* § 404.1520(d); 416.920(c). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* § 404.1520(e); 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* § 404.1545(a)(1); 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f); 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work,

the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* § 404.1520(g)(1); 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since July 24, 2015, the application date. (Tr. 13-14). At step two, the ALJ found that plaintiff had the following severe impairments: (1) lumbar disc disease; (2) cervical disc disease; (3) asthma; (4) obesity; and (5) migraines.[4] (Tr. 23-24). At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 14). Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> [T]he [plaintiff] has the residual functional capacity to perform light
> work as defined in 20 CFR 416.967(b) except the claimant can

---

[4] Also at step two, the ALJ observed that plaintiff's history of gastroesophageal reflux disease is well controlled with medications and has no more than minimal effect on her ability to perform basic work activities. (Tr. 14).

occasionally push, pull, and stoop. She can occasionally be exposed to respiratory irritants, dust, odors, fumes, and extremes in temperature and humidity. The claimant can only work in environments that primarily are in indoor lighting and have no more than a moderate noise level.

(Tr. 14-15).

Proceeding to step four, the ALJ concluded that plaintiff does not have any past relevant work. (Tr. 20). Proceeding to step five, and after considering plaintiff's age, work experience and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as mail clerk and cleaner/housekeeping. (Tr. 20). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from July 24, 2015, the date the application was filed, through February 26, 2018, the date of the decision. (Tr. 21).

IV.    *Plaintiff's Challenges*

Plaintiff argues, *inter alia*, that by affording partial and little weight to the only medical opinions in the record the ALJ created an evidentiary gap and improperly substituted his own lay opinion as to plaintiff's residual functional capacity.[5] (*See* Dkt. No. 11-1 (Plaintiff's Memo of Law)). For the reasons that follow, the Court finds that substantial evidence did not support the ALJ's determination regarding plaintiff's residual functional capacity.

The ALJ obtained three medical opinions in this matter. He gave little weight to the opinion of Dr. Toor, who examined plaintiff for a social services determination of

---

[5] Plaintiff also argues that the ALJ erred in assigning weight to medical opinions rendered by Harbinder Toor, M.D. and Karl Eurenius, M.D. Having concluded below that remand is necessary for the Commissioner to obtain additional evidence to formulate the RFC, the Court does not make a determination as to the propriety of the weight given to these opinions. The Commissioner should consider this argument upon remand.

employability on May 8, 2013. (Tr. 19, 749-754). He received two opinions from Dr. Eurenius, a consultative examiner. (Tr. 18, 355-358, 639-642). His decision makes no reference to the July 2013 opinion. He granted partial weight to Dr. Eurenius's September 18, 2015 opinion. (Tr. 18). The ALJ explained that he gave reduced weight because of inconsistencies between the doctor's opinion and physical examination findings. (Id.). Although Dr. Eurenius opined that plaintiff was "moderately limited in bending, lifting, carrying, pushing, pulling, prolonged sitting and prolonged standing due to chronic low back pain with neuropathic symptoms," the ALJ noted that Dr. Eurenius's physical exam showed "full neck flexion" and "only some limitations in her lumber flexion." (Tr. 18, 642). The ALJ also cited medical imaging reports which showed straightening of the spine, but no arthritis, degeneration, or disc disease. (Tr. 18, 766-770).

Dr. Eurenius's opinion was the only opinion to which the ALJ gave partial weight, and thus is the basis for his RFC determination. By affording only partial and little weight to the medical opinions in the record, Plaintiff submits that the ALJ created a gap as to the RFC assessment. Plaintiff further argues that ALJ substituted his own lay opinion and interpretation of medical findings about plaintiff's impairments over the medical opinion of Dr. Eurenius. The Commissioner contends that the ALJ did not wholly reject Dr. Eurenius's opinion and made an RFC determination consistent with the consultative examiner's findings. (See Dkt. No. 12-1 (Def's Memo of Law)).

The ALJ is responsible for assessing a claimant's residual functional capacity based on all relevant medical and other evidence. 20 C.F.R. § 404.1545; 1546(c). In determining RFC, the ALJ must consider objective medical evidence and medical source opinions, as well as nonmedical information and claimant's own statements about the

intensity, persistence, and limiting effects of symptoms. *Id.* § 404.1545; SSR 16-3p, 2016 SSR LEXIS 4 (S.S.A. Mar. 16, 2016). Medical opinions are statements from acceptable medical sources about what a claimant can do despite his or her impairments and whether a claimant has impairment-related limitations on his or her ability to perform physical, mental, or other demands of work and adapt to environmental conditions. *See* 20 C.F.R. 404.1513(a)(2); 404.1527(a).

An RFC is a "medical assessment" which the ALJ generally cannot make without medical testimony or other medical evidence to support his or her decision. *See* SSR 83-10, 1983 LEXIS 30, *17 (S.S.A. Jan. 1, 1983). "[A]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Dougherty-Noteboom v. Berryhill*, 2018 U.S. Dist. LEXIS 138097, *29-30 (W.D.N.Y. Aug. 15, 2018) (quoting *Matta v. Astrue*, 508 F. Appx. 53, 56 (2d Cir. 2013) (summary order)). Acknowledging that an ALJ's decision need not perfectly correspond with any of the opinions, it is also important to note that ALJ is not a medical professional and is not qualified to assess a claimant's RFC on the basis of bare medical findings. *See Benman v. Comm'r of Soc. Sec.*, 350 F.Supp. 3d 252, 257 (W.D.N.Y. Nov. 20, 2018) (citations omitted). An ALJ cannot simply "secure raw data from the treating physician" to make his or her own disability decision. *See Cira v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 160991, *25 (E.D.N.Y. Sept. 29, 2017) (quoting *Peed v. Sullivan*, 778 F.Supp. 1241, 1246 (E.D.N.Y. 1991)). An ALJ must instead rely on medical opinions based on that raw data. *See Sweeting v. Colvin*, 2013 U.S. Dist. LEXIS 147883, *12-13 (N.D.N.Y. Oct. 15, 2013). It is error for an ALJ to base his RFC assessment solely upon

his interpretation of raw medical data without an expert's medical opinion. *See Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) ("[W]ithout opinions from the medical professionals concerning the impact of these results on Plaintiff's RFC, the ALJ simply concluded that Plaintiff was capable of performing light work. This was error.").

Here, the ALJ gave little weight to the medical opinion of Dr. Toor and gave partial weight to that of Dr. Eurenius. An ALJ does not necessarily "reject" opinion evidence when the opinion is afforded less than controlling weight and where it is evident that the RFC determination incorporates limitations contained in that opinion. *See Beckles v. Comm'r of Soc. Sec.*, 2019 U.S. Dist. LEXIS 148587, *11 (W.D.N.Y. Aug. 30, 2019); *see also Currie v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 178591, *11 (W.D.N.Y. Oct. 17, 2018); *but see Kiggins v. Comm'r of Soc. Sec.*, 2019 U.S. Dist. LEXIS 51973, *15-16 (W.D.N.Y. Mar. 27, 2019) (holding that where the ALJ does not give controlling or significant weight to any of the medical opinions of record and instead only gives "some weight" or "partial weight" to all of the opinions, it is reasonable to assume that the ALJ must have relied upon the raw medical data to form his own "common sense" RFC). In *Beckles*, the Court rejected plaintiff's contention that the ALJ used her own lay interpretation to formulate the RFC. *See* 2019 U.S. Dist. LEXIS 148587 at *10. Although the ALJ gave only partial weight to the sole medical opinion in the record, the Court saw that the RFC determination clearly incorporated the limitations opined by the doctor, and in fact, the ALJ ultimately assessed even greater limitations that those expressed in the opinion. *Id.* at *11-13.

In this case, unlike *Beckles*, it is not evident that the ALJ fully incorporated functional limitations given in the only opinion he accepted with partial weight. The

Commissioner argues that a medical opinion indicating moderate physical limitations may be consistent with light work with additional restrictions, as was assessed here. *See Harrington v. Colvin*, 2015 U.S. Dist. LEXIS 22357, *36-39 (W.D.N.Y. Feb. 25, 2015) ("Although some caselaw suggests that moderate or severe limitations in prolonged walking are inconsistent with full range light or medium work [...], other courts do not consider an opinion assessing moderate limitations for sitting, standing and walking inconsistent with a determination that claimant can perform the requirements of light or medium work [...].). Here, however, the Court views the light work RFC finding as inconsistent with Dr. Eurenius's opinion, other medical evidence in the record, and plaintiff's testimony concerning plaintiff's impaired cervical and lumbar spinal function.  Dr. Eurenius found that plaintiff was moderately limited in her ability to perform prolonged sitting or standing, and the ALJ did not provide reasons tending to support the finding that, despite the moderate limitations, plaintiff could still perform light work. *See Harrington*, 2015 U.S. Dist. LEXIS 22357 at *39-40. The ALJ pointed to claimant's function report, in which she stated that she cares for herself and her two children, she can go outside three times per week and shop for approximately three hours, and she can walk for 45 minutes before needing to rest. This level of function does not meet the benchmarks set out in the Commissioner's Regulations and Rulings.[6] In fact, the ALJ indicated nothing in the record demonstrating that plaintiff was able to handle standing or walking for 6 hours out of an 8-hour workday, as is required for light work. Accordingly,

---

[6] The Regulations define "light work" as requiring frequent lifting or carrying of objects weighing up to 10 lbs. and "a good deal of walking or standing, or [...] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. Social Security Ruling (SSR) 83-10, 1983 SSR LEXIS 30, *13-14 (Jan. 1, 1983).

the RFC determination was not consistent with Dr. Eurenius's opinion of moderate physical limitations. *See Scott v. Berryhill*, 2018 U.S. Dist. LEXIS 158428, *14-15 (W.D.N.Y. Sept. 17, 2018).

Further, the explanation the ALJ gave for determining that plaintiff was capable of light work with additional restrictions was that Dr. Eurenius's examination findings and plaintiff's x-rays indicated straightening of the spine, but no arthritis, degeneration, or disc disease. Imaging reports and physical examination observations are raw data and bare medical findings, which the ALJ is not entitled to interpret, particularly in a manner conflicting with a medical opinion. *See Benman v. Comm'r of Soc. Sec.*, 350 F.Supp. 3d 252, 259-60 (W.D.N.Y. Nov. 20, 2018) (citing *Rodriguez v. Colvin*, 2015 U.S. Dist. LEXIS 45357, *70 (S.D.N.Y. Mar. 31, 2015)) (where the RFC finding is at odds with the only medical opinion of record regarding plaintiff's physical capability, the Court determined that the ALJ improperly substituted his own medical opinion for plaintiff's physical limitations).

By discounting the only opinion he gave some weight to, the ALJ left a gap in the record and relied instead on his own lay opinion to interpret the medical records. When such an evidentiary gap exists, the ALJ's RFC determination is not supported by substantial evidence and remand is warranted. *See Gross v. Astrue*, 2014 U.S. Dist. LEXIS 63251, *50-54 (W.D.N.Y. May 7, 2014). When facing an incomplete record, an ALJ should develop the record by obtaining a consultative examination, re-contacting a medical source, or having an expert testify at the hearing. *Id.* at *54; *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (finding that the ALJ should have further developed the record where his rejection of a medical opinion had left a gap in the record).  Thus,

the Court finds that the ALJ's RFC finding is not supported by substantial evidence and that the case must therefore be remanded.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No.11) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.


**SO ORDERED.**


Dated:        June _16_, 2020
              Buffalo, New York

                                        _____
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge